IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICK GUIDRY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-07-378-D |
| ) | |
| CHENEGA INTEGRATED SYSTEMS, ) | |
| L.L.C., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court is Plaintiffs' Second Motion for Conditional Class Certification, to Approve Notice and Consent, for Court Order Requesting the Identity of All Putative Class Members and Authorization to Send Notice to Potential Class Members [Doc. No. 31]. This Motion is fully briefed and at issue.[1] For reasons that follow, the Court grants the Motion in part, as explained below.

The Court denied Plaintiffs' original motion for certification of a collective or class action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), for the reason that the record lacked "substantial allegations of common wage practices across the broad class of employers proposed by Plaintiffs" and Plaintiffs provided "no basis to conclude that employees of all companies encompassed by the proposed class were affected by the alleged wage violations described in the Complaint." *See* Order 9/21/07 [Doc. 30] at 5-6. Immediately after the denial, Plaintiffs filed the Second Motion without any additional factual information to substantiate the

---

[1] Defendants have requested permission to file an additional brief to respond to Plaintiffs' supplemental reply brief, but the Court finds that the pertinent issues are adequately addressed in the existing briefs.

existence of a common policy of similar wage violations, but they proposed a revised definition of the putative class. Plaintiffs made alternative requests for approval of a class of employees of Defendant Chenega Technical Products, LLC ("CTP"), now Chenega Integrated Systems, LLC ("CIS"), that either included employees of a nonparty subcontractor, Vance Federal Security Services ("Vance"), and encompassed approximately 29 work locations nationwide, or excluded the subcontractor's employees and encompassed about half of those locations.[2] Defendants timely opposed the Second Motion by re-urging their objections to the original motion and proposing that the Court defer a ruling while the parties conducted discovery on the issue of whether CTP/CIS was a joint employer of the subcontractor's employees. After conducting discovery, Plaintiffs subsequently asked to supplement the Second Motion to present additional information regarding the relationship between CTP/CIS and the subcontractor, Vance, and to broaden the proposed class to include employees of Defendant Chenega Security and Protection Services, LLC ("CSPS"), which was also a subcontractor during the relevant time period. The request was granted, *see* Order 2/19/08, and additional briefing followed, including briefs regarding a motion filed by Defendants requesting permission to file a motion for partial summary judgment on the "joint employer" issue.[3]

Despite the volume of the existing record, the fervor of the parties' arguments, and the complexity of the issues raised by their submissions, the sole issue presented at this notice-stage of the case is whether to certify a conditional class of "similarly situated" employees under 29 U.S.C.

---

[2] At the time, the total number of locations to be considered and the number of locations served by CTP/CIS or Vance was unclear.

[3] This request is premature. Defendants have no potential liability as a joint employer of Vance's employees, and there is no need for a dispositive motion on this issue, unless such employees are joined in this action.

§ 216(b) and *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001). *See* Order 9/21/07 [Doc. 30] at 2. Under FLSA's opt-in class mechanism and the *ad hoc* approach approved in *Thiessen*, the Court must make an initial determination of whether Plaintiffs have presented "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id*. at 1103 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). After careful consideration, the Court finds that Plaintiffs have presented substantial allegations of a putative class of armed security guards employed by CTP/CIS but they have not presented substantial allegations of similar wage practices by CTP/CIS's subcontractors.

According to the Complaint and the materials submitted in support of the Second Motion, Plaintiffs are three former employees of CTP/CIS who worked as armed security guards at Fort Sill, Oklahoma, from May, 2004, to August, 2006.[4] Plaintiffs seek to recover compensation allegedly earned but unpaid during their employment because CTP/CIS maintained a policy of requiring armed security guards to arrive at work 30 minutes before their scheduled shifts in full uniform with necessary equipment and "to engage in integral and indispensable work related activities" before and after each scheduled shift that "constitute compensable work time under the FLSA" for which Plaintiffs received no wages or overtime pay for work in excess of 40 hours per week. *See* Compl. [Doc. 1] at 3, ¶¶ 9-10. Plaintiffs claim CTP/CIS's conduct constituted a willful violation of FLSA's minimum wage and overtime compensation statutes, 29 U.S.C. §§ 206, 207(a)(1), warranting the recovery of unpaid wages and liquidated damages. Plaintiffs allege there were approximately 100 similarly situated employees at Fort Sill alone and that CTP/CIS, directly or indirectly through its

---

[4] Defendants explain that CTP changed its name to CIS in October, 2004, during the proposed class period, and these two names refer to the same entity.

subcontractors (Vance and CSPS), provided similar security services at other military installations nationwide.

By their Second Motion as supplemented, Plaintiffs ask the Court to grant conditional certification of a proposed class of current and former employees of CTP/CIS, Vance and CSPS who held the position of "Armed Security Guard" or "Security Force Officer" between July, 2003, and October, 2007,[5] at any of 29 security service military installations and who were subjected to uniform job requirements and policy requiring that they arrive at work approximately 30 minutes before a scheduled shift and remain at work after the scheduled shift for a period of time for which they were not compensated but during which they were engaged in work-related pre-shift and post-shift activities for the benefit of their employer. *See* Supplement [Doc. 56] at 8-9.  As factual support for this putative class of similarly situated employees, Plaintiffs present their own affidavits and affidavits of two former co-workers who relate common work experiences in their jobs as armed security guards at Fort Sill, namely, that they were routinely required to engage in work-related activities before and after their assigned shifts without pay or overtime pay if they worked more than 40 hours in a work week. Specifically, Richard Camarena and Victoria Elbert state in identical language in their affidavits:

> During my employment as an armed security guard, I was required to arrive at work 15-30 minutes prior to guard mount in proper uniform and carrying needed, issued equipment. Prior to guard mount, I was required to sign out my weapon, ammunition, pepper spray and ASP (expandable baton).
>
> The weapon and equipment sign-out/in sheets were recorded in "real time"[;] however, I was not compensated for the time spent engaging in weapon and equipment sign-out and sign-in. Also, there were occasions when my assigned shift ended before travel was completed from my gate back to the armory.

---

[5] The contract to supply armed security services at military sites ended in October, 2007.

*See* Second Motion, Camarena Aff. [Doc. 31-11], ¶¶ 4-5; Elbert Aff. [Doc. 31-12], ¶¶ 4-5. Although not explained in their factual materials, Plaintiffs argue in their brief that "guard mount" does not have a single meaning but refers to "an event associated with the beginning of a paid shift" and "begins sometime after guards have drawn their weapons and ammunition from the armory and encompasses the formation, inspection, briefing and transportation of the uniformed armed guards to their respective posts." *See* Second Motion [Doc. 31] at 3.

To support the allegation that CTP/CIS followed a company-wide policy of requiring uncompensated work activities, and that subcontractors followed the same policy, Plaintiffs rely on the use of identical written job descriptions at Fort Sill and other installations that list the essential job duties and responsibilities of an armed security guard or security force officer as follows:

- Will arrive at work 30 min. prior to guard mount, in proper uniform and carrying needed, issued equipment.
  * * * *
- Will draw assigned weapon.
- Will participate in Guard Mount, receive assigned post, and copy any extra instructions.
  * * * *
- Will not remove firearm from installation, required to turn in after shift.

*See* Second Motion, Exs. 6-9 [Doc. Nos. 31-7 to 31-10]. Plaintiffs rely primarily on the fact of this uniform job description – particularly the requirement to arrive at work 30 minutes before guard mount – to show that CTP/CIS and its subcontractors followed the alleged common policy of requiring employees to engage in uncompensated work activities before and after their scheduled shifts. All other factual allegations and materials are presented in an effort to establish that CTP/CIS should be held liable for its subcontractors' conduct as either a statutory employer under the Service

Contract Act, 41 U.S.C. §§ 351-58, or a "joint employer" under FLSA and federal common law.[6] None of these allegations or materials submitted for this purpose, however, shed significant light on the subcontractors' wage practices.[7]

After careful consideration of Plaintiffs' arguments, the Court remains unpersuaded that Plaintiffs have presented substantial allegations that all putative class members were victims of a common wage policy or plan. Under the *ad hoc* approach, the factual showing needed to satisfy FLSA's "similarly situated" standard depends on the nature of the alleged wage violations in a particular case, and Plaintiffs bear the burden to demonstrate a "reasonable basis" for their claim of class-wide misconduct. *See Morgan v. Family Dollar Stores, Inc.*, No. 07-12398, 2008 WL 5220263 (11th Cir. Dec. 16, 2008) (to be published). Here, the broad scope of Plaintiff's proposed class exceeds the bounds of their factual allegations and materials.

In particular, Plaintiffs' singular focus on the uniform written job descriptions utilized by CTP/CIS and its subcontractors is unwarranted under the circumstances. The fact that putative class members were employed in similar positions may be critical in some cases, for example, where the question is whether a class of employees was exempt from overtime wage requirements or whether a class of nonexempt employees was denied overtime pay. *See*, *e.g.*, *Underwood v. NMC Mortgage*

---

[6] To that end, Plaintiffs present information such as: CTP/CIS conducted site visits and inspections to evaluate Vance's performance and received daily communications from Vance's operations manager; Vance's employees were identified by uniform as Chenega-Vance employees; Plaintiffs received an employee handbook stating a policy regarding working hours for "[e]mployees of the Chenega Vance Protective Service Guard Contract," *see* Pls.' Supplement, Ex. 6 [Doc. 56-7]; CTP/CIS required Vance to report certain incidents involving its employees and to implement CTP/CIS's drug testing policy; CTP/CIS had a contractual right to "reject" Vance employees and made recommendations regarding on-the-job conduct, such as smoking; and CTP/CIS and Vance shared a program management office for a period of time. *See* Pls.' Supplement [Doc. 56] at 4-8.

[7] No information at all is submitted concerning CSPS.

*Corp.*, 245 F.R.D. 720 (D. Kan. 2007); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676 (D. Kan. 2004); *see also Fortna v. QC Holdings, Inc.*, No. 06-CV-0016-CVE-PJC, 2006 WL 2385303 (N.D. Okla. Aug. 17, 2006).  In cases like this one, however, where an employer allegedly required a class of employees to engage in work activities without compensation, a plaintiff must also show the existence of a common, company-wide policy or practice with respect to the compensation of those employees.  *See*, *e.g.*, *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930 (N.D. Ill. 2008); *see also Barnwell v. Corrrections Corp.*, No. 08-2151-JWL, 2008 WL 5157476 (D. Kan. Dec. 9, 2008).  The fact that early arrival and pre-shift and post-shift work activities are listed as job duties in the written description of the position says nothing about whether or not the employees performing the required duties were compensated for those work activities.

The only record information about subcontractors' wage practices appears in deposition testimony of Timothy McManus, who was "program manager for Vance on the Army contract in 2003 to 2007 October."  *See* McManus Dep. 8:10-11.  His testimony concerning Vance's attendance-reporting and timekeeping practices reflects that Vance established its own policies for its employees and attempted to develop uniform procedures among its installations.  *See* McManus Dep. 61:18-62:18 (stating "I would set policy" regarding time reporting procedures at Vance locations).  From the materials submitted, it remains unclear precisely how Vance determined the hours worked by individual employees, but the record suggests that source documents included daily logbooks in which each guard's log-in and log-out times for his weapon were recorded.  *See* McManus Dep. 63:6-65:22.  If these were the source documents for an employee's time sheets – as suggested by deposition testimony regarding Mr. McManus' view of the "best methodology to use," *see* McManus Dep. 79:13-17 – then time spent participating in guard mount, traveling to and from

assigned posts, and waiting to sign in an assigned weapon would be included in a guard's compensable time, which does not fit Plaintiffs' factual allegations regarding wage violations at Fort Sill. Moreover, the record is silent concerning CSPS.

Concerning CTP/CIS, however, the Court finds that Plaintiffs have presented substantial factual allegations of a company-wide policy of requiring armed security guards to participate in pre-shift and post-shift work activities without compensation. Speaking from personal knowledge, Plaintiffs and nonparty co-workers have provided sworn statements concerning CTP/CIS's pay practices for armed security guards at Fort Sill. Plaintiffs have also presented copies of personnel policies and published pay scales suggesting that CTP/CIS utilized uniform procedures and pay practices among military installations for which it provided security services under contract with the Department of Defense. From these materials, the Court finds a reasonable basis to conclude that CTP/CIS engaged in similar wage practices at all military installations where CTP/CIS directly employed and supplied armed security guards under the contract.[8] In short, the Court finds the Plaintiffs have made a minimally sufficient showing for the purpose of conditional certification under FLSA for notice purposes that all employees of CTP/CIS who worked as armed security guards at military installations served by the contract were similarly situated.[9]

For these reasons, the Court will conditionally certify a collective action under 29 U.S.C. § 216(b) for the purpose of giving notice. The conditional class is:

---

[8] Defendants have presented affidavits from employees at various installations denying Plaintiffs' allegation of uncompensated work activities. Included is the affidavit of another armed security guard at Fort Sill. *See* Martinez Aff. [Doc. 37-11]. Defendants' response thus presents a credibility issue that is inappropriate for resolution at this stage of the case.

[9] Vance used the term "Security Force Officer" while CTP/CIS used the term "Armed Security Guard" so only the latter term is pertinent to the approved class.

> All persons who were employed by Chenega Technical Products, LLC or Chenega Integrated Systems, LLC in the position of "Armed Security Guard" between July, 2003, and October, 2007, at certain security service military installations and who were subjected to uniform job requirements and policy requiring that they arrive at work approximately 30 minutes before a scheduled shift and remain at work after the scheduled shift for a period of time for which they were not compensated but during which they were engaged in work-related pre-shift and post-shift activities for the benefit of their employer.

From the parties' submissions, it appears there are 15 subject military installations: Fort Greely, AK; Fort Richardson, AK; Fort Wainwright, AK; Fort Irwin, CA; Presidio Monterey, CA; Sierra Army Depot, CA; Fort McNair, DC; Henderson Hall, VA; Fort Knox, KY; Fort Polk, LA; Barnes Building, MA; Fort Sill, OK; Fort Bliss, TX; Fort Sam Houston, TX, and Fort Myer, VA. *See* Pls' Supplement, Ex. 1; *see also* Defs.' Response [Doc. 37] at 7; Hueners Aff. [Ex. 37-2], ¶ 9.

The Court declines to approve the form of proposed notice submitted by Plaintiffs, which does not conform to the Second Motion or the Court's ruling. *See* Second Motion, Ex. 14. Instead, the Court will direct the parties to meet and confer in an effort to reach agreement, if possible, concerning (1) a reasonable time and manner for Defendants to disclose information regarding putative class members and (2) the form and content of a class notice and opt-in consent form. In discussing the latter issue, the Court refers the parties to proposed forms recently submitted for court approval in another pending FLSA case: *Courtright v. Payne County Board of Commissioners*, Case No. CIV-08-230-D, Motion for Conditional Collective Action Certification, Exhibits A-B. See also forms approved by the district court in *Fortna*, 2008 WL 2385303 at *10-*13.

IT IS THEREFORE ORDERED that Plaintiffs' Second Motion for Conditional Class Certification [Doc. No. 31] is GRANTED in part and DENIED in part, as set forth above. The parties shall submit for the Court's approval not later than March 2, 2009, any agreed notice and

consent forms. If an agreement cannot be reached, Plaintiffs shall file a motion by that same date seeking approval of their proposed forms and informing the Court of the nature of the parties' disagreement.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File a Partial Motion for Summary Judgment under Fed. R. Civ. P. 56 on the Joint Employer Issue [Doc. No. 59] is DENIED as moot.

IT IS FURTHER ORDERED that Defendants' Motion for Leave of Court to File Response to Plaintiffs' Reply Brief [Doc. No. 65] is DENIED.

IT IS SO ORDERED this 6th day of February, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE